IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Carl T. Coldiron, | : | |
| Plaintiff | : | Civil Action 2:07-cv-1077 |
| v. | : | Judge Graham |
| M.D. Jane Farley, | : | Magistrate Judge Abel |
| Defendant | : | |

# Report and Recommendation

Plaintiff Carl Coldiron, a State prisoner, brings this action under 28 U.S.C. §1983 against Dr. Farley in her individual and official capacities and alleges that she subjected him to cruel and unusual punishment by denying him a medically prescribed cane and retaliated against him for filing a grievance against a corrections officer. This matter is before the Magistrate Judge on defendant Jane Farley, M.D.'s August 6, 2008 motion for summary judgment (doc. 58).

**I.     Allegations in the Complaint and Amended Complaint**

The complaint alleges that on July 17, 2007, correctional officer ("CO") Ewing made a false entry in Coldiron's medical file indicating that he had observed plaintiff speed walking while holding his cane in the air. Compl. ¶ 1. On July 19, 2007, Dr. Jane Farley met with plaintiff regarding the allegation of the correctional officer. At that time, Dr. Farley made an entry in his file noting that his cane was permanent. *Id.* On July 23, 2007, Coldiron filed a complaint against CO Ewing. *Id.* On August 8, 2007, Dr.

Farley took his cane away. *Id.* On August 20, 2007, plaintiff was injured when he fell, and Dr. Farley refused to treat him. Plaintiff was taken to Madison Hospital, where he was treated. The hospital doctor ordered that defendant return Coldiron's cane to him immediately. The complaint asserts that defendant intentionally denied plaintiff medical treatment and exhibited deliberate indifference to his serious medical needs constituting cruel and unusual punishment. *Id.* at Summary of Claim 1.

The complaint also alleges that on August 31, 2007 Coldiron fell again and injured his leg. *Id.* at ¶2. Dr. Farley would not see him, and he was told that his cane had not been reissued. *Id.* On September 7, 2007, Dr. Farley again refused to return his cane. *Id.* On September 13, 2007, Coldiron was evaluated by a neurologist. The neurologist concluded that Coldiron must use the cane at all times and failure to do so would damage his back, legs, and nerve system. *Id.* Defendant continued to refuse to return plaintiff's cane. *Id.* On September 19, 2007, Dr. Farley again refused to see plaintiff. *Id.* On October 3, 2007, Coldiron requested his cane from defendant. Dr. Farley said that the neurology tests were inconclusive and that she could not read them. *Id.*

The complaint further alleges that it was a violation of his privacy and a Federal court consent decree for a correctional officer to access his medical file and falsify records. Defendant admitted to knowing this and then used the false allegation to cover up her own wrongful actions. *Id.* at 3. The complaint asserts a claim for discrimination against the disabled. *Id.*

2

The complaint also asserts a claim for retaliation. On June 15, 2007, CO Hester forced plaintiff to walk without his cane and made him verify the need for a cane. Inmate Health Services verified that plaintiff's cane was permanently issued to him. The inspector concluded that Hester should not have made Coldiron walk without his cane. On July 15, 2007, CO Hester cussed him out for filing a complaint against him.

On July 17, 2007, CO Ewing, CO Hester's buddy, indicated that he was going to get him for something. He wrote in plaintiff's medical chart that he had seen Coldiron speed walking with out using his cane. On July 19, 2007 defendant advised Coldiron that she knew Ewing was lying and she indicated in his chart that his cane was permanent. Shortly after that, Dr. Farley took his cane from him.

In his amended complaint, Coldiron added claims for medical malpractice and for discrimination under the Americans with Disabilities Act. Defendant filed a motion to dismiss plaintiff's state medical malpractice claims, and on June 13, 2008, I issued a Report and Recommendation recommending that the motion be granted.

II.     **Arguments of the Parties**

   A.     **Defendant Jane Farley, M.D.**

Dr. Farley argues that she was not deliberately indifferent to any serious medical need of Coldiron's. Dr. Farley argues that prisoners do not have a constitutional right to adequate medical care. When a prisoner has received medical attention, and the dispute concerns the adequacy of the treatment, federal courts are reluctant to second

guess medical decisions. A disagreement between a prisoner and his physician concerning the course of treatment does not constitute a § 1983 claim.

To show that prison official acted with deliberate indifference, plaintiff must show that the official both knew of and disregarded an excessive risk to inmate safety or health. Dr. Farley maintains that she was presented with information from staff and her own observations that demonstrated the absence of a serious medical need. Based on information that Coldiron was seen speed walking, Dr. Farley exercised medical judgment, which is beyond the purview of the Eighth Amendment. Even assuming that Coldiron's condition constituted a serious medical need, Dr. Farley did not demonstrate deliberate indifference. Instead, Coldiron was provided with medical care and evaluations during the relevant time period. Dr. Farley also argues that Coldiron cannot show any action or inaction by her that was the proximate cause of any injury of his. Dr. Farley further argues that any injuries sustained by Coldiron were *de minimis*.

Dr. Farley also argues that Coldiron has made vague assertions that Dr. Farley retaliated against him for exercising his First Amendment rights by submitting an informal complaint against a correction officer. Dr. Farley maintains that Coldiron cannot show a retaliatory or other unconstitutional animus, and his retaliation claim fails as a result.

Dr. Farley also argues that she is entitled to qualified immunity because Coldiron cannot prove a constitutional claim, that the right that he claims was clearly established, and that defendant's actions were objectively unreasonable.

### B. Plaintiff Carl T. Coldiron

Plaintiff Coldiron disputes the allegation that he was speed walking while holding his cane up in the air. Plaintiff argues that Dr. Farley evaluated him on July 19, 2007, two days following the alleged event, and she determined at that time that Coldiron needed his cane permanently and completed a medical restriction statement noting as such. Plaintiff maintains that the evidence demonstrates that Dr. Farley was deliberately indifferent to his serious medical need because she took his cane away *after* evaluating plaintiff and determining the need for his cane.

According to Coldiron, three weeks after Dr. Farley determined that he needed his cane permanently, Dr. Farley took away his cane because of staff complaints. Plaintiff maintains that defendant completely ignored her previous medical determination that he required the use of a cane. There was no re-evaluation or testing done before the cane was taken from him. On September 13, 2007, Coldiron was seen by a neurologist. The neurologist concluded that plaintiff required the use of a cane. Despite the neurologist's note that Coldiron's cane should be returned to him, Coldiron's cane was not returned to him at that time.

On August 20, 2007, plaintiff fell while walking as a result of his left leg giving out on him. He maintains that he would not have fallen had he been permitted to use his cane. Plaintiff has suffered permanent nerve damage which requires the use of a cane. Plaintiff contends that the hospital records concerning this incident confirm his need for the cane.

5

At Coldiron's next appointment with defendant, Coldiron maintains that Dr. Farley said that she needed to contact the neurologist prior to giving him his cane. Coldiron also alleges that he was told to obtain a copy of the August 20, 2007 incident report detailing his fall in the recreation yard to assist him in getting his cane back.

On October 8, 2007, Coldiron was seen walking to Inmate Health Services by Dr. Ikeena. Dr. Ikeena asked plaintiff why he was dragging his foot. Plaintiff alleges that he told Dr. Ikeena how his cane had been taken from him and Dr. Farley refused to return it to him. At this point, Dr. Ikeena reviewed his medical record and indicated that Coldiron needed his cane on a permanent basis. Despite Dr. Farley's assertion that the neurologist's report was unclear, Dr. Ikeena easily understood the report. Coldiron argues that this demonstrates deliberate indifference on the part of Dr. Farley.

### III. Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

7

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

**IV.     Analysis**

    **A.     Eighth Amendment**

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To

demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 103-04. Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

A prison official does not act with deliberate indifference unless the official both knows of and disregards an excessive risk to inmate safety or health. The official must be aware fo the facts from which she could draw the inference that a substantial risk of serious harm exist, and she must also draw the inference. *Cairelli v. Vakilian*, 80 Fed. Appx. 979 (6th Cir. 2003). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Estelle*, 429 U.S. at 838.

Here, considering the evidence in favor of the non-moving party, there is a genuine dispute about material facts. Coldiron's medical records suggest that Dr. Farley was aware that his cane was necessary for his health and safety. A May 8, 2001 physical examination revealed that plaintiff had musculoskeletal and neurological abnormalities.

9

Pl.'s Exh. 1; Doc. 63-2 at 1. A February 1, 2007 doctor's order stated that Coldiron could "keep his cane @ BS." Pl.'s Exh. 3; Doc. 63-2 at 3. On July 19, 2007, just two days after the notation was made that plaintiff was seen speed walking, Dr. Farley wrote, "review of chart supports hx back surgery & need for cane, get old nerve study." Pl.'s Exh. 8; Doc. 63-2 at 8. Dr. Farley also issued an order stating, "cane for ambulation-permanent restriction." Pl.'s Exh. 10; Doc. 63-2 at 10. On August 20, 2007, Coldiron was treated at the emergency room after falling. Pl.'s Exh. 22 & 25; Doc. 63-3 at 8 &11. His emergency room after care instructions indicated that plaintiff should use a cane. Pl.'s Exh. 24; Doc. 63-3 at 10. A September 17, 2007 consultation report indicated that Coldiron needed his cane permanently. Pl.'s Exh. 12; Doc. 63-2 at 12. Despite having the consultation report, on October 3, 2007, Dr. Farley indicated that she required a "typed ortho consult" or the name and telephone number of the doctor. Pl.'s Exh. 16; Doc. 63-3 at 2. On October 8, 2007, Dr. Ikeena reinstated plaintiff's cane permanently. *Id.* Plaintiff has come forth with evidence which raises an issue of material fact with respect to whether Dr. Farley knew that removing plaintiff's cane would result in substantial risk of serious harm to plaintiff and disregarded that risk.

Defendant also argues that she is entitled to qualified immunity. Determining whether qualified immunity is appropriate is a three step inquiry. First, the Court determines whether a constitutional violation occurred. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Second, the Court determines whether the alleged conduct of the defendants violated a clearly established statutory or

10

constitutional right of which a reasonable person would have been aware. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). If the right is clearly established, the Court must determine whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what the defendant allegedly did was objectively unreasonable in light of clearly established constitutional rights." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

Here, plaintiff has alleged that Dr. Farley was deliberately indifferent to his serious medical need. It is clearly established that infliction of unnecessary suffering on a prisoner by failing to treat his medical needs is inconsistent with contemporary standards of decency and violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Coldiron has pled sufficient facts to suggest that defendants' conduct could be found objectively unreasonable by the trier of fact.

Consequently, the Magistrate Judge RECOMMENDS that defendant Jane Farley, M.D.'s August 6, 2008 motion for summary judgment (doc. 58) be DENIED with respect to Coldiron's claim arising under the Eighth Amendment.

### B.  First Amendment

A claim for a First Amendment retaliation has three elements: the plaintiff engaged in protected conduct, the defendant took an adverse action against the plaintiff, and this adverse action was taken because of the protected conduct. *Thaddeus-X, et. al. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Coldiron easily satisfies the first element because a prisoner has a constitutional right to file grievances against prison

11

officials. *Smith v. Campbell*, 250 F.3d 1032, 1037 (2001) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

The second element of a First Amendment retaliation claim is a showing that an adverse action was taken. *Thaddeus-X*, 175 F.3d at 396. The question arises whether taking away Coldiron's cane constitutes an adverse action. In order to determine whether actions of lesser severity merit being deemed "adverse" for purposes of a retaliation claim, we adopt the standard suggested by Judge Posner in *Bart v. Telford*, 677 F. 2d 622, 625 (7th Cir. 1982), that an adverse action is one that would "deter a person of ordinary firmness" from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396. Having one's medically necessary cane taken away would likely deter a person of ordinary firmness from filing a grievance.

Finally, Coldiron must come forth with evidence showing that there is a causal connection between the protected conduct, complaining about CO Ewing, and the adverse action. "[T]he plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Id*." *Smith, Jr. v. Campbell*, 250 F.3d 1032, 1038 (2001).

Here, plaintiff cannot satisfy the third element. Plaintiff has not produced any evidence to suggest a causal connection between his protected conduct and the removal of his cane. He has not alleged any special relationship between CO Ewing and Dr.

Farley. Rather, Freeman contends that Dr. Farley acknowledged that CO Ewing was acting improperly when he accused Coldiron of not needing a cane. Coldiron has failed to make a showing sufficient to establish the existence of an element essential to his case. Because Coldiron has not come forth with evidence demonstrating that a causal connection exists between his protected activity and the adverse action, the Magistrate Judge RECOMMENDS that defendant Jane Farley, M.D.'s August 6, 2008 motion for summary judgment (doc. 58) be GRANTED with respect to plaintiff's claim for retaliation under the First Amendment.

## V. Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendant Jane Farley, M.D.'s August 6, 2008 motion for summary judgment (doc. 58) be DENIED in part with respect to plaintiff's claim arising under the Eighth Amendment and GRANTED in part with respect to plaintiff's claim for retaliation under the First Amendment.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/ Mark R. Abel  
United States Magistrate Judge